LYONS, Judge.
Delivered the resolution of the Court as follows:
The Court, after mature consideration, does not discover that Mr. Copland is entitled to the relief which he sought by his bill.
Indeed such a suit, in a Court of Equity, appears to be a little extraordinary. For, if we understand the nature of it, as stated in the bill, it is to obtain the transfer of a fraudulent contract, supposed to have been made by Buck and Brandtr, as trustees for Copland, with Mostly; without allowing the latter any satisfaction for the injury, or even making him a party to .the suit; although he was original owner of the land, and the person on whom the fraud was first and principally committed: Since it is charged, that Buck and Brandtr concealed from Mm, the offer by Mr. Copland of two shillings per aci’e, and of more than any other person would give for the land. So that according to that statement, Mosely had a right to set aside the contract with Buck and Brandtr, and to have the land restored to him again: And as Copland had made no contract with him, he could derive no claim from the sale to the others.
But Mr. Copland insists, that he confided in Buck S¡ Brandtr to make the purchase for him; that, by promising to write to Mosely on his behalf, they thereby became invested with a fiduciary character; and were converted into trustees for him, as well as for Mostly: that, acting as trustees for Mostly, they had promised him a refusal of the land, and, therefore, ought not to have purchased for themselves without his consent: that, such trusts are not within the statute of frauds, hut a Court of Equity will enforce an execution of them; and, therefore, that the plea in the present case will not avail the defendants, who being in possession of the lands and title papers, are noi *192 entitled to hold them; but ought to convey them to him, an¿ not enjoy the benefit arising from their own misconduet.
But how is the trust proved? Stick § Brander deny it. They aver that they bad power from Mosely either to sell the lands or retain them to their own use, in part of the debt due to them; and that they only promised a refusal to Copland, in case they, should sell. They deny, that they ever wrote, or engaged to write to Mr. Mosely, for or on behalf of Copland, or made any other ¡promise, than a refusal, in case more than two shillings per acre should be offered; finally, they deny that they ever had any offer made to them by Copland or any other person, of more than two shillings per acre, until after the agreement was made with Mr. Mosely, for the purchase on their own account; although they admit that Mr. Copland, (who, according to his own statement, at last only tendered two shillings,) sometimes stated that he would give more, but „ did not say how much. In all which respects the answer is not contradicted, or disproved by any testimony in the cause; and, as it is reponsive to the bill, the facts as therein stated, must be taken to be true.* So, that the trust is so far from being confessed, that it is positively denied, and the plaintiff produces no evidence to establish it. Of course the arguments bottomed on the trust all vanish; and the plaintiff had no foundation for relief upon that ground.
But, if the trust was established, yet Mosely, who was so much, interested, and is said to have been injured by the transaction, ought to have been made a party. For, surely a Court of Equity would not decree all the benefit of the fraud, if one was committed, to the plaintiff only; and give him the whole gain arising from the misconduct of his own trustees. On the contrary, we suppose, that in such a case, a* Court of Equity would set aside the sale to Buck ¿¡- Brander; and (as the promise to Mr. Copland was only of a refusal of the land, so that he might perhaps be allowed to take it or not as he pleased,) direct a new sale. By. which means Copland would have an opportunity of bidding for it, and by a fair public sale, justice would be done to Mosely, the party most injured in the business; and who was conscientiously entitled to the best price that could be gotten for the land.
*193 But as no trust is proved, and no agreement in writing shewn, Mr. Copland has no equity; but was completely barred by the plea. * ^
^ The decree of the Court of Chancery, therefore, is to be reversed, and the bill dismissed with costs, †

[* See Ante, 1 vol. 224, Maupin v. Whiting.]

[* As to the effect of the plea, tho the agreement be admitted by the answer, see Tucker, J. in Argenbright v. Campbell et ux. 3 H. and M. 161, 164; and Washington, J. in Thompson v. Tod, 1 Peters R. 388, in which his Hon. said, That an opinion at one time prevailed, that on a suit for the specific execution of a parol agree» ment for the sale of land, the defendant must either confess or deny the agreement, aud that, in the former case, the plea of the statute of frauds would he unavailing, is not less true than strange» But this doctrine has been repeatedly over-ruled, (Cooper’s Plead. 256,7; 2 H. Blac. 63; 2 Bro. C. C. 563; 4 Ves. 23; 6 Ves. 543,) and it is now the settled rule of the Court, that, although the defendant should answer and admit the agreement as stated in the bill, he may, nevertheless, protect himself against a per» formance, by pleading the statute.
And see Beanies’ Pleas in Equity, 178, and the cases there cited.]

[† After tliis decree, suit was instituted against Buck & Brandev, by the real and personal representatives of Mosely, in which it was decided by the Court of Appeals, that the cou« tract for the purchase of the land by Buck & Brander, was made under such circumstances of fraud and con« cealmeni, that the same ought to be vacated. Mosely’s adm’r. & heirs v. Buck & Brander, 3 Munf. 232. See Davoue v. Fanning et ex. 2 Johns. Ch. R. 252.]